IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NONPAREIL CORPORATION, an Idaho Corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| REDDY RAW, INC., a New York Corporation, d/b/a REDDY RAW AND AFFILIATED COMPANIES, | ) ) ) ) ) |
| Defendant. | ) ) ) |

Case No.: CV 07-253-E-EJL

**MEMORANDUM ORDER**

## INTRODUCTION

Defendant Reddy Raw, Inc. ("Reddy Raw") brings before the Court a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative seeks to transfer this action to an alternate venue. Plaintiff Nonpareil Corporation, ("Nonpareil") opposes the motion arguing that both general and specific jurisdiction apply to Reddy Raw and that the District of Idaho is the most appropriate venue for this action and opposes transfer to any other location. Defendant Reddy Raw has also filed a motion to strike information from the record which it feels was gathered inappropriately and should not be considered when deciding this motion.

## STANDARD OF REVIEW

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v.*

*Fred Martin Motor Company,* 374 F.3d 797, 800 (9th Cir. 2003) (citing *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990)). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* In these types of cases it is only necessary to "inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 128 (9th Cir. 1995). "All factual disputes are resolved in the plaintiff's favor." *Lake v. Lake,* 817 F.2d 1416, 1420 (9th Cir. 1987) (citing *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir. 1986)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger,* 374 F.3d at 800. As Idaho's long-arm statute intends to grant jurisdiction to its courts in all situations where federal due process requirements are satisfied, jurisdictional analysis under Idaho state law and federal due process are identical. *Doggett v. Electronics Corp. Of Am.,* 93 Idaho 26, 30 (1969). *See also Houghland Farms, Inc. V. Johnson,* 119 Idaho 72, 75 (1990), *Lake,* 817 F.2d at 1420.

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice." *Schwarzenegger,* 374 F.3d at 801 (citing *International Shoe Co. V. Washington,* 326 U.S. 310, 316 (1945)). A finding of general jurisdiction requires an exacting standard because such a finding allows a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world. *See Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.

Memorandum Order                             2

1986).  A finding of specific jurisdiction requires that the nonresident defendant: (1) purposefully direct activities or perform some act where he purposefully avails himself of the privileges of the forum state, (2) the claim must arise out of or relate to the forum related activities, and (3) the exercise of jurisdiction must be reasonable.  *See Lake,* 817 F.2d at 1421.

## BACKGROUND

Nonpareil is an Idaho Corporation with its principle place of business in Blackfoot, Idaho.  Nonpareil has been involved in the production of vegetable products in Idaho, New York, and other areas since the 1940s.  Nonpareil began business as Idaho Potato Packers and in the 1960s acquired the Nonpareil trademark after which it commenced operations under that name.  Nonpareil's operations have varied throughout the years, but have always dealt, in one way or another, with the distribution of vegetable products.  Throughout the years of change at Nonpareil, Nonpareil has always taken great care in preserving its trademarks and has obtained several trademark registrations.

In 1983 Nonpareil sold the frozen french fry component of its business to Ray Saoud, a businessman operating out of  New York.  At the time of the sale Nonpareil had been selling its frozen french fries using the Nonpareil label.  As part of the sale of the frozen french fry business, Mr. Saoud obtained certain rights to the Nonpareil label.  Nonpareil has represented to the Court that these rights were limited and temporary in nature.

In 1988 Mr. Saoud sold the french fry business which he had purchased from Nonpareil to Reddy Raw.  Reddy Raw is a New York corporation, with its principle place of business in Wood-Ridge, New Jersey.  It redistributes predominantly frozen foods to the food services industry in the Northeast and Middle Atlantic States.  Reddy Raw does not maintain any

business offices in Idaho, and does not have any employees, officers, directors, or agents that reside in, or work in Idaho. Reddy Raw does not currently hold, and never has possessed, a certificate of authority to do business in Idaho. Reddy Raw does not own property in the state of Idaho, does not have any telephone numbers or mailing addresses for Idaho, nor does it have any accounts with banks or other financial institutions located in Idaho. Reddy Raw does not pay taxes to the state of Idaho.

As a re-distributor to the food services industry, Reddy Raw sells products to regional distributors and manufacturers who then resell those products principally to hospitals, prisons, schools, restaurants and other institutional food services providers. Reddy Raw also sells products to local "jobbers."[1] Reddy Raw contends that it does not and never has sold products in Idaho. All of its products are shipped for distribution to one of three facilities in New Jersey and are sold F.O.B. New Jersey. Reddy Raw does not market its products through print, television, radio, or any other medium directed at Idaho.

Reddy Raw has purchased a variety of vegetable products and packaging materials from the state of Idaho from companies such as J.R. Simplot, Carnation, Universal Frozen Foods, Great American Appetizers, and Boise Cascade. Many of those purchases were brokered by Highland Ventures, an Idaho corporation. On one occasion Reddy Raw also authorized Great American Appetizers to sell Reddy Raw products on the condition that those products were sold in the western United States. Great American Appetizers in turn allegedly sold product to the

---

[1] "Jobbers" is a term used to refer to independent local deliverers who load their own trucks each morning at Reddy Raw's New Jersey warehouse and deliver goods to local restaurants and businesses.

Memorandum Order                4

Grocery Outlet which has approximately four stores in Idaho.[2]

Nonpareil brought this action against Reddy Raw for trademark infringement and unfair business practices.  Reddy Raw seeks to dismiss this action for lack of personal jurisdiction, or in the alternative for transfer to a different venue.  Nonpareil sought leave of the Court to conduct limited discovery to determine if personal jurisdiction was proper.  That limited discovery has been completed and Nonpareil has submitted its response memorandum and additional evidence attempting to support a finding of personal jurisdiction.  Reddy Raw has submitted its reply memorandum and the Court is prepared to issues its ruling.

## ANALYSIS

This Court must determine if personal jurisdiction exists in this case.  Personal jurisdiction may exist in one of two ways, either through general jurisdiction or specific jurisdiction. General jurisdiction requires a nonresident defendant such as Reddy Raw to engage in "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, (1984), that "approximate physical presence" in the forum state, *Bancroft & Masters,* 223 F.3d 1082, 1086 (9th Cir. 2000).  Specific jurisdiction requires that the nonresident defendant: (1) purposefully direct activities or perform some act where he purposefully avails himself of the privileges of the forum state, (2) the claim must arise out of or relate to the forum related activities, and (3) the exercise of jurisdiction must be reasonable.  *See Lake,* 817 F.2d at 1421.  The Court will examine both possibilities in turn.

---

[2]Grocery Outlet is a large discount grocery chain which operates over 120 stores throughout the western United States, principally in California, Washington, Oregon and Nevada.  A complete examination of this transaction is covered in the analysis portion of this Order.

Memorandum Order                              5

General Jurisdiction

Nonpareil contends general jurisdiction is appropriate in this case due to Reddy Raw's dealings with an Idaho food broker, Idaho food producers and packers, and the authorization of the sale of products in the western United States. Nonpareil identifies the following contacts as support for a finding of general jurisdiction: Reddy Raw has maintained a relationship with an Idaho broker for approximately ten years who brokered deals with Idaho food producers. In addition, Reddy Raw has purchased large quantities of vegetables from these Idaho food producers and also purchased packaging materials from an Idaho company. Nonpareil also contends that Reddy Raw authorized the sale of its products in the western United States through its relationship with Great American Appetizers.

These contacts do not rise to the elevated level required for a finding of "continuous and systematic" contacts required by the Supreme Court in *Helicopteros*. The contacts outlined by Nonpareil in its response memorandum demonstrate that Reddy Raw has been doing business *with* Idaho companies, but has failed to establish a prima facie case that Reddy Raw is doing business *in* Idaho as required for a finding of general jurisdiction. *Bancroft & Masters,* 223 F.3d at 1086. The Court agrees with Nonpareil that Reddy Raw has been purchasing products from Idaho companies at fairly regular intervals, but "mere purchases, even if occurring at regular intervals, are not enough to establish general jurisdiction." *Schwarzenegger*, 374 F.3d at 801, (citing *Helicopteros,* 466 U.S. at 418, and *Rosenberg Bros. & Co. V. Curtis Brown Co.,* 260 U.S. 516, 518 (1923)).

Nonpareil also contends that Reddy Raw authorized the sale of goods in Idaho through its

relationship with Great American Appetizer who then developed a relationship with Grocery Outlet which has four stores in Idaho. However, even viewing Nonpareil's contentions in the light most favorable to them, *See Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir. 1992), they have failed to show that Reddy Raw products were sold in Idaho. Therefore, Nonpareil has failed to establish a prima facie case that general jurisdiction is present in this case as required by *Caruth,* 59 F.3d at 128.[3]

Specific Jurisdiction

Nonpareil also argues that Reddy Raw has sufficient "minimum contacts" with Idaho arising from, or related to, this action to create a scenario where a finding of specific personal jurisdiction would be appropriate. The Ninth Circuit uses a three-pronged analysis to determine if specific jurisdiction may be exercised over a nonresident defendant. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir. 1997). The three-part test requires that the minimum contacts be:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Schwarzenegger,* 374 F.3d at 802 (citing *Lake,* 817 F.2d at 1421). The plaintiff bears the burden

---

[3] Nonpareil has never directly alleged that Reddy Raw products were sold in Idaho. Nonpareil has only alleged that Reddy Raw products could have been sold in Idaho through Great American Appetizers. The record shows that this relationship with Great American Appetizers never resulted in any Reddy Raw products being sold in Idaho and that the food involved in this transaction was eventually donated to a food bank. Thomson Aff., Ex. A, 68:1-17.

of satisfying the first two prongs before the burden will shift to the defendant.  *Sher,* 911 F.2d at 1361.  If plaintiff proves the first two prongs then defendant must present a compelling case: that the exercise of jurisdictions would not be reasonable.  *See Burger King Corp. V. Rudzewicz,* 471 U.S. 462, 476-78 (1985).

     1. Purposeful Direction

The first prong requires Nonpareil to prove that Reddy Raw either purposefully availed itself of the privilege of conducting activities in Idaho, or intentionally directed its activities toward Idaho.  The two standards sound similar, but are different concepts that require unique approaches.  The Ninth Circuit has explained that the purposeful direction analysis is the most often used and most appropriate for suits dealing with torts.  *See Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002).  The Ninth Circuit has also applied the purposeful direction analysis to trademark cases.  *See Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894 (9th Cir. 2002), *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082 (9th Cir. 2000).   Therefore, this Court will apply the purposeful direction analysis as explained in *Dole.*

"A showing that a defendant purposefully directed his conduct toward a forum state usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere."  *Schwarzenegger,* 374 F.3d at 803 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774-75 (1984)).  We evaluate purposeful direction under the three part test articulated by the Supreme Court in *Calder v. Jones,* 465 U.S. 783, (1984).  "Under *Calder* the 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

Memorandum Order                              8

*Schwarzenegger,* 374 F.3d at 803 (citing *Dole Food,* 303 F.3d at 1111).

      1) Intentional Act

In order to establish its prima facie case, Nonpareil must demonstrate that Reddy Raw committed an "intentional act." Act and intentional both have specialized meanings when used with the *Calder* test. The word act, when used with the *Calder* test, is used to "denote an external manifestation of the actor's will and does not include any of its results." *Schwarzenegger* 374 F.3d at 806. Coupling this definition of "act" with "intentional" the intent is specific to the accomplishing of the act, and not connected with the consequences which stem from that act. Therefore in order to establish an "intentional act" as required by *Calder* Nonpareil only needs to show that Reddy Raw intended to distribute products with the markings that are the substantive element of this claim. Review of the Restatement and the case law demonstrates that Reddy Raw committed an "intentional act" by placing Nonpareil's trademark on Reddy Raw product and distributing that product. Therefore the first element of the *Calder* test has been satisfied.

      2) Express Aiming

Nonpareil must also establish that Reddy Raw "expressly aimed" the intentional act of placing the Nonpareil trademark on Reddy Raw product at Idaho. Nonpareil cannot satisfy this element with the facts of this case. Reddy Raw's intentional act of placing the Nonpareil mark on Reddy Raw products was aimed at the Northeastern and Middle Atlantic areas of the United States, not Idaho. Reddy Raw's purpose in distributing the products with these markings was to maximize sales in these areas, not to cause damage to Nonpareil in Idaho. It may be true that distribution of products in markets outside of Idaho may cause damage to Nonpareil in Idaho,

and Reddy Raw may have known that Nonpareil operated out of Idaho. However, the mere fact that a defendant can foresee an effect in the forum state is not sufficient for an assertion of specific jurisdiction. *See Burger King,* 471 U.S. at 474.

In its response memorandum Nonpareil referred to the *Calder* test and the three requirements that are necessary for a finding of purposeful direction. Nonpareil relies on three cases from the Ninth Circuit to demonstrate that Reddy Raw directed its activities at Idaho and therefore satisfies the second requirement of express aiming. While each case deals with similar factual scenarios, all are distinguishable from these proceedings.

The first case used by Nonpareil is *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894 (9th Cir. 2002). In *Mattel*, the California corporation Mattel which produces Barbie, the iconic doll known throughout the world, sued Aqua, a Danish band, for its distribution of a song titled "Barbie Girl." The Ninth Circuit held that the distribution of the song was conduct "expressly aimed" at California. The decision in *Mattel* was partly based on the premiss that the damage from the distribution of material that was the subject of trademark infringement would primarily occur in California. Nonpareil argues this ruling makes a finding of personal jurisdiction in this case proper as the majority of the harm felt by Nonpareil from Reddy Raw's actions would be felt in Idaho. However, the Court in *Mattel* also based its decision on the fact that Aqua had "entered into cross-licensing agreements and developed a coordinated plan to distribute the Barbie Girl song in the United States (including California), and sent promotional copies of the Barbie Girl single and the Aquarium album to the United States (including California)." *Mattel,* 296 F.3d at 899. Such conduct has not occurred in this case. Reddy Raw has not developed a plan to distribute its product in Idaho and has no intention of expanding its market outside of the

Memorandum Order                              10

Northeast and Middle Atlantic regions of the United States.  Therefore *Mattel* does not apply to this case and a finding of personal jurisdiction based on the ruling in *Mattel* would be inappropriate.

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082 (9th Cir. 2000), the second case relied upon by Nonpareil, deals with a small computer company in California that sought a declaratory judgment for non-infringement against Augusta National, the golf club in Georgia that conducts the annual Masters golf tournament.  The Court granted specific personal jurisdiction based on a letter sent by Augusta National that had the sole purpose and intent of taking effect on the plaintiff in California.  The Court explained that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.  We have said that there must be 'something more.'"  *Bancroft,*  223 F.3d at 1087.  The something more in *Bancroft* was the letter.  In *Mattel* the something more was the plan to distribute the album in California.  In this case the "something more" does not exist.  Reddy Raw has not done anything which constitutes activity that has been expressly aimed at Idaho as required by *Bancroft.*

Nonpareil also relies upon *Panavision Int'l, L.P., v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998) as support for a finding of specific personal jurisdiction.  In *Panavision,* the defendant registered Panavision's trademark as his domain name as part of a scheme to solicit money from Panavision.  The Ninth Circuit based part of its decision on the fact that the brunt of the harm would be felt in California.  However, this was not the only reason for the Ninth Circuit's holding.  There still needed to be "something more" as articulated in *Bancroft.*  In *Panavision* the "something more" was the scheme to solicit money directly from Panavision.  In this case the

Memorandum Order                                         11

"something more" simply does not exist.  Reddy Raw has not specifically directed any activities at Nonpareil in an attempt to directly solicit money from them.  *Panavision* does not warrant a finding of personal jurisdiction in this case.

After reviewing the application of the *Calder* test in the cases addressed above, this Court finds that the "express aiming" requirement has not been met.  Therefore, this Court rules that the actions taken by Reddy Raw were not expressly aimed at Idaho.  As Nonpareil has failed to meet its burden with respect to the second prong of the *Calder* test an analysis of the third prong is unnecessary.  Failure by Nonpareil to satisfy the second prong of the *Calder* test results in this Court finding that specific jurisdiction does not exist in this case.

Motion to Strike

The Court has reviewed the information contained in the declarations which Reddy Raw seeks to remove from the record through its motion to strike.  The Court finds that the information contained in those declarations is non-outcome determinative in its resolution of this motion to dismiss.  As inclusion of the material from the declarations in the Court's analysis of personal jurisdiction resulted in a finding that personal jurisdiction did not exist, Reddy Raw's motion to strike is moot.

**SUMMARY**

This Court finds that Nonpareil has not established that general or specific jurisdiction exists with respect to Reddy Raw in the state of Idaho.  Reddy Raw has not engaged in activity that constitutes "continuous and systematic general business contacts," *Helicopteros,* 466 U.S. at 416, that "approximate physical presence" *Bancroft,* 223 F.3d at 1086, in Idaho that would justify it being sued there for any act it committed anywhere in the world.  Nonpareil has also

failed to satisfy the second requirement of the *Calder* test, express aiming at the forum state, and has therefore not made out a prima facie case for a finding of specific jurisdiction. This Court therefore finds that it has no personal jurisdiction over Reddy Raw and this case is dismissed.

### ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction (Docket No. 10) be **GRANTED.**

2. Defendant's Motion to Transfer in the Alternative (Docket No. 10) be **DISMISSED** as moot.

3. Defendant's Motion to Strike (Docket No. 32) be **DISMISSED** as moot.

**SO ORDERED.**

DATED:  March 14, 2008

~~Honor~~able Edward J. Lodge
U. S. District Judge